IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHRISTOPHER JETHRO EMERSON, | § |
| Petitioner, | § |
| VS. | § CIVIL ACTION NO. H-10-1199 |
| RICK THALER, | § |
| Respondent. | § |

**MEMORANDUM AND OPINION**

The petitioner, Christopher Jethro Emerson, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his parole revocation in May 2009. The respondent moved for summary judgment, (Docket Entry No. 14), with a copy of the state court record.[1] Emerson responded. (Docket Entry No. 17). After consideration of the motion, the record, and applicable authorities, this court grants the respondent's motion and dismisses this case. The reasons are explained below.

**I.      Background**

A jury found Emerson guilty of the felony offense of aggravated sexual assault. (Cause Number 439551). On November 7, 1986, the jury sentenced Emerson to a thirty-five year prison term. Emerson was released from TDCJ custody on mandatory supervision on June 23, 2000. The

---

[1] In support of his motion for summary judgment, the respondent includes the following:
| | |
|---|---|
| Appendix A. | A copy of Emerson's Certificate of Mandatory Supervision |
| Appendix B. | A copy of the "Minutes" sheet from Emerson's parole file |
| Appendix C. | A copy of the outgoing mail log from the Eastham Unit |
| Appendix D. | An affidavit from the supervisor of Criminal Post Trial Services of the Harris County District Clerk's Office |
| Appendix E. | Copies of the relevant parole statute at the time of the offense and at the time of the revocation |
| Appendix F. | A copy of a sworn statement from TDCJ's Classification and Records Department |
| Appendix G. | A copy of the revocation packet from Emerson's parole file |

Texas Board of Pardons and Paroles ("Board") initially revoked Emerson's release on February 13, 2009. On March 13, 2009, the revocation hearing was reopened and the Board's decision to revoke was held in abeyance pending final disposition. The Board revoked Emerson's mandatory supervision on May 18, 2009.

On April 13, 2010, this court received Emerson's federal petition. Emerson contends that his parole revocation is void on the following grounds:

(1) the revocation violated the Double Jeopardy Clause because he was not charged with new criminal offenses; and

(2) the forfeiture of previously earned good-time credits on revocation violated the prohibition against *Ex Post Facto* laws and bills of attainder because it lengthened Emerson's original sentence.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 7). The respondent moves for summary judgment on the ground that Emerson's claims are unexhausted. Alternatively, the respondent argues that the claims lack merit. This court addresses Emerson's claims on the merits and concludes that they fail as a matter of law.

## II. The Applicable Legal Standards

Emerson's petition must be analyzed under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether

a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case;

3

or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. The issue is whether the state court's application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).

Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)); *Martin v. Cain,* 246 F.3d 471, 475 (5th Cir. 2001). A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman,* 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke,* 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact but also to the implicit findings of the state court. *Garcia,* 454 F.3d at 444-45 (citing *Summers v. Dretke,* 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear

4

and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Emerson is a *pro se* petitioner. *Pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). Emerson's state and federal habeas petitions are broadly interpreted. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

### III. The Claim Based on a Violation of the Double Jeopardy Clause

Emerson states that he was released to parole on June 23, 2000, was subsequently arrested on December 31, 2008, and had his parole revoked in May 2009. Emerson alleges that the revocation was "illegal" because he was not charged with a new criminal offense and did not violate other conditions of his parole. Emerson argues that his revocation violates the Double Jeopardy Clause because he was not charged with new criminal offenses. (Docket Entry No. 1, Federal Petition, Appendix, p. 8).

The Fifth Amendment's Double Jeopardy Clause protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). A sentence imposed after the revocation of supervised release or probation is not "punishment" but rather part of the penalty for the original conviction. *Johnson v. United States,* 529 U.S. 694, 700 (2000); *United States v. DiFrancesco,* 449 U.S. 117, 137 (1980). Consequently, "there is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *DiFrancesco,* 449 U.S. at 137. Emerson's claim based on a violation of the Double Jeopardy Clause fails as a matter of law.

Emerson also alleges that he was denied due process in his parole revocation hearing. (Docket Entry No. 13, p. 10). In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the Supreme Court held that while "not all situations calling for procedural safeguards call for the same kind of procedure," *id.* at 481, the constitutional right to procedural due process applies to parole revocation hearings. The Court outlined the minimum constitutional requirements for the two critical stages in the parole revocation process.

First, in the preliminary hearing, when the State determines "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions," there are at least three procedural protections required:

> [1] The parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. [2] At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. [3] On request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence. However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

*Id.* at 486-87.

Second, if the State determines that there is probable cause for believing the parolee violated the terms of his parole, the State must afford the parolee the option of a final revocation hearing. This hearing goes beyond a determination of probable cause "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." 408 U.S.

at 438. The Supreme Court outlined six essential protections for this stage required by the Due Process Clause:

> [1] written notice of the claimed violations of parole; [2] disclosure to the parolee of evidence against him; [3] opportunity to be heard in person and to present witnesses and documentary evidence; [4] the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); [5] a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and [6] a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The Supreme Court observed that "[g]iven the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id.* at 483. The Court stressed that the final revocation hearing should be a "narrow inquiry" yet flexible enough for the parole board to "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* The goal is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484.

Applying these requirements to this case shows that, as a matter of law, there was no due process violation. On January 3, 2009, Emerson received written notice of the alleged violations of the conditions of his parole. Specifically, he received notice that he had allegedly violated Rule 2, which prohibits new state or federal criminal offenses. (Docket Entry No. 14, Respondent's Motion for Summary Judgment, Ex. G, p. 38). Emerson was accused in the notice of assaultive offenses, specifically, assaulting his ex-girlfriend on September 26 and December 29, 2008 and assaulting his

niece on September 26, 2008. (*Id.*). Emerson attended his revocation hearings held on February 10 and May 8, 2009. He denied violating Rule 2 on the basis that although these offenses were reported, no criminal charges were filed. *Id.* Emerson was presented with the evidence against him, which included the revocation hearing report dated January 27 and February 10, 2009; a first partial hearing report dated April 13, 2009; and the testimony of the supervising parole officer, Williams. (*Id.* at 6). Emerson elected to testify at the hearing and also to call his brother and girlfriend as witnesses. (*Id.* at 12). He had an opportunity to testify on his own behalf, and he was able to cross-examine the adverse witnesses who testified. Emerson did not challenge the neutrality of the hearing officer. Emerson received a copy of the hearing report processing sheet and the revocation hearing report, showing the reasons for revocation, but he refused to sign. (*Id.* at 3, 18). Emerson received a written statement of the evidence and the reasons for the Board's action. *Morrissey*, 408 U.S. at 488-89.

Emerson maintains that because new criminal charges were not filed, he is actually innocent of violating his release conditions. Given these circumstances, he contends there is no basis for revocation. A revocation proceeding, however, is not a criminal trial. To revoke probation, parole, or supervised release, neither an arrest, charge, nor conviction of a new criminal offense is required. The hearing officer may consider evidence of new criminal conduct and revocation may be based on that conduct as long as there is some factual support showing that the releasee engaged in the conduct. *See id.; Else v. Johnson*, 104 F.3d 82, 83 (5th Cir. 1997).

Contrary to Emerson's assertion, the Constitution does not bar parole authorities from considering criminal activities for which the parolee has not been charged. *Maddox v. U.S. Parole Comm'n*, 821 F.2d 997, 999 (5th Cir. 1987) ("the commission may consider . . . allegations of

criminal activity for which the prisoner has not even been charged."); *Villareal,* 985 F.2d at 839 (parole boards may consider charges that were dismissed by the State); *Else v. Johnson,* 104 F.3d 82, 83 (5th Cir. 1997) (per curiam) (no due process violation when the State considered a dismissed criminal charge as the basis for parole revocation).

The respondent has provided the court with a record of the revocation proceedings. The testimony at the hearings provide evidence that Emerson committed the criminal offense of assault. (Docket Entry No. 14, Respondent's Motion for Summary Judgment, Ex. G, pp. 21-22). The due process requirements of *Morrissey* were satisfied.

### IV. The Claim Based on Forfeiture of Good-Time Credits

Emerson claims that the TDCJ-CID improperly refused to restore good-time credits he had earned while incarcerated, before his parole and its revocation. The TDCJ-CID grants good-conduct time to an inmate actively engaged in an agricultural, vocational, or educational endeavor, in an industrial program or other work program, or in a treatment program. TEX. GOV'T CODE ANN. § 498.003(a) (West 2000). An inmate may accrue good-conduct time in an amount that does not exceed 15 days for each 30 days actually served, for diligent participation in such a program. TEX. GOV'T CODE ANN. § 498.003(d).

To the extent that Emerson's claim is based on violations of state law, these claims are not a proper basis of federal habeas relief. A state prisoner seeking federal court review of his conviction or sentence under 28 U.S.C. § 2254 must assert a violation of a federal constitutional right. *Fierro v. Johnson,* 197 F.3d 147, 156 (5th Cir. 1999). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The question before a federal habeas

corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated. *Neyland v. Blackburn,* 785 F.2d 1283, 1293 (5th Cir.), *cert. denied,* 479 U.S. 930 (1986); *Coleman v. Thompson,* 501 U.S. 722, 730 (1991).

The Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974)). If a state creates a right to good-time credit that gives rise to a liberty interest, then a prisoner is entitled to Fourteenth Amendment procedural due process in relation to the loss of such credit. *See Madison,* 104 F.3d at 768 (citing *Wolff,* 418 U.S. at 557). Under Texas law, however, "good-time credit is not a vested right, but rather is a privilege which may be forfeited, either by violating the TDCJ's rules while in its custody, or by violating the guidelines of a conditional release program." *Ex parte Henderson,* 645 S.W.2d 469, 472 (Tex. Crim. App. 1983).

When Emerson committed the underlying offense, Texas law provided, as it does today, that good-time credit applies only to eligibility for parole or mandatory supervision and does not otherwise affect an inmate's prison term. TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1977); TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985). Texas law provided, as it does today, that "good conduct time is a privilege and not a right." TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985); *see* TEX. GOV'T CODE ANN. § 498.003(a) (West 1992). The statute stated:

> Upon revocation of parole or mandatory supervision of an inmate, the inmate loses all good conduct time previously accrued, but upon return to the department the inmate may accrue new good conduct time for subsequent time served in the department. The director may, however, restore good conduct time forfeited upon revocations not involving new criminal convictions after an inmate has served a

>reasonable period of good behavior in the department, to be no less than three months, subject to rules adopted by the department.

TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1985).

In 1987, the Texas legislature added a provision that allowed the Texas Board of Criminal Justice to adjust its policy on good-time credits to address prison overcrowding. If the Board of Criminal Justice determined that overcrowding had decreased, it would not be necessary to restore good time or award additional good time to reduce prison population and the Board could direct the TDCJ to discontinue those practices. TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4 (West 1988); *see Hallmark v. Johnson,* 118 F.3d 1073, 1075 (5th Cir.), *cert. denied,* 522 U.S. 1003 (1997). In 1995, the Texas legislature amended the statute on the reinstatement of previously earned good-time credits. On a return to incarceration, an inmate could accrue new good-time credits but the TDCJ could no longer restore previously earned good-conduct time forfeited on a revocation. *See* TEX. GOV'T CODE ANN. § 498.004(b) (West 1999).

Since as early as 1985, Texas law provided the Board of Criminal Justice discretion to forfeit previously earned good-time credits for parole violations. The Board has also had the discretion to restore previously forfeited good-time credits. In *Hallmark,* the Fifth Circuit observed that because the Texas statutes have given the state correctional authorities discretion to restore forfeited good-time credits, there is no protected liberty interest in restoring such credits. *Hallmark,* 118 F.3d at 1079-80 (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 11 (1979)). The failure to restore Emerson's previously forfeited good-time credits violates neither Texas law nor the United States Constitution.

Emerson's bill of attainder argument is similarly flawed. A bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial. *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846-47 (1984); *accord, Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 748 n.4 (5th Cir. 1988). There are three requirements for a bill of attainder: specification of the affected person or persons, punishment, and lack of a judicial trial. *Selective Serv. Sys.*, 468 U.S. at 847. Emerson's allegations make it clear that he was not the victim of a bill of attainder. This basis for relief fails as a matter of law.

V.   **Conclusion**

The respondent's Motion for Summary Judgment, (Docket Entry No. 14), is granted. Emerson's petition for a writ of habeas corpus is denied. This case is dismissed. Emerson's motion for summary judgment, (Docket Entry No. 13), motion to serve copies of Emerson's documents, (Docket Entry No. 16), motion for relief, (Docket Entry No. 18),[2] and motion for default judgment, (Docket Entry No. 19), are denied as moot. Any remaining pending motions are denied as moot.

A certificate of appealability requires a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). An applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson*, 202 F.3d 760, 763 (5th Cir. 2000). When a district court has

---

[2] This pleading is a copy of Emerson's response to respondent's motion for summary judgment. (Docket Entry No. 17).

rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Emerson's petition after careful consideration of the merits of his constitutional claims. Emerson has not made the necessary showing for issuance of a certificate of appealability. Accordingly, a certificate of appealability is denied.

SIGNED on November 17, 2010, at Houston, Texas.

                                              Lee H. Rosenthal
                                     United States District Judge